UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ANDREW BARNETTE,

                           Petitioner,

         – against –

SUPERINTENDENT OF
EASTERN CORRECTIONAL FACILITY,

                           Respondent.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**21 CV 2596 (RPK)(LB)**

**BLOOM, United States Magistrate Judge:**

       Petitioner, Andrew Barnette, files this *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2013 conviction in Kings County Supreme Court for Kidnapping in the Second Degree, Robbery in the Second Degree, Unlawful Imprisonment in the Second Degree, Assault in the Third Degree, Endangering the Welfare of a Child, and Criminal Possession of Stolen Property in the Fifth Degree. Pet., ECF No. 1 at 1.[1] This judgment was modified by the Appellate Division, Second Department, which (1) vacated the conviction of Unlawful Imprisonment in the Second Degree and (2) modified the conviction to impose concurrent rather than consecutive sentences. People v. Barnette, 150 A.D.3d 1134, 1134–35 (2d Dep't 2017). The Honorable Rachel P. Kovner referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

---

[1] For ease of reference, all citations are to the ECF pagination of the state court record and the parties' briefs.

## BACKGROUND

### I. Underlying Crimes

According to the evidence adduced at trial,[2] on November 21, 2011, at approximately 2:45 p.m., petitioner Andrew Barnette[3] and his co-defendants, Bertram Barnette and Calvin Cole, abducted complainant A.A.[4] outside the Quality Inn located at 2473 Atlantic Avenue in Brooklyn, New York. Trial Tr., ECF No. 8-6 at 119–23, 479. A.A. was dragged by petitioner and Cole into Bertram Barnette's car. Id. at 36, 69, 121. An off-duty police officer, Detective Michael Evans, heard the struggle at 2473 Atlantic Avenue from a distance. He arrived at the scene as a car was pulling away from the Quality Inn and captured the license plate of the vehicle. Id. at 65, 68-69.

A.A. had run away the day before, deciding she no longer wanted petitioner to be her pimp. Id. at 117, 411-13. In the car, petitioner punched and choked A.A., demanding that she return $320, which she had recently earned through sex work and which petitioner believed belonged to him. Id. at 113, 127, 413. After driving around for a short period of time, petitioner told A.A. to get out of the car in Canarsie, on 93rd Street and Avenue D. Id. at 130. Petitioner took A.A.'s jacket and the one boot she still had on after her initial abduction. Id. Petitioner also kept A.A.'s phone and her companion Albertha Jovin's phone, which A.A. was holding when she was abducted. Id. at 122, 131.

At approximately 4:00 p.m., Bertram Barnette was apprehended by Deputy Chief Jeffrey Maddrey, a member of the New York City Police Department ("NYPD"), who identified Bertram

---

[2] Petitioner was tried by jury in Kings County Supreme Court from April 22 to May 10, 2013 before the Honorable Bruce Balter. Trial Tr., ECF Nos. 8-6, 8-7, 8-8. The trial transcript begins at ECF No. 8-6, page 1 and concludes at ECF 8-8, page 351.
[3] The trial transcripts also refer to petitioner by his nickname "Little." See Trial Tr., ECF No. 8-6 at 36.
[4] As complainant was a minor at the time of the incident, she is identified by her initials.

2

Barnette's vehicle as involved in an abduction of a teenager earlier that afternoon. Trial Tr., ECF No. 8-7 at 87, 89.

The police tracked the two stolen cell phones, which led them to Kayla Brown, who was in possession of A.A.'s cell phone. Trial Tr., ECF No. 8-6 at 501-2. Based on Detective Alan Kalisky's interview of Kayla Brown, which included showing her a surveillance video of A.A.'s abduction, the police identified petitioner as a suspect. Id. at 507; Trial Tr., ECF No. 8-7 at 145. Detective Kalisky also testified that Albertha Jovin identified Andrew Barnette on the surveillance video by referring to him by his nickname, "Little." Trial Tr., ECF No. 8-6 at 520-21. Another detective conducted a Facebook search and found petitioner's account, "Little Barnette." Trial Tr., ECF No. 8-7 at 111.

Detective Santiago Frances testified that he was told to look for A.A. in the area of St. Mark's Place and Nostrand Avenue on November 22, 2011. Id. at 152. He was also told that Andrew Barnette was a suspect in the abduction, and he was given a photograph of petitioner. Id. When he arrived in the vicinity of St. Mark's Place and Nostrand Avenue, Detective Frances recognized petitioner, approached him, and asked if he was Andrew Barnette. At first, petitioner said no, but then he admitted that he was Andrew Barnette. Id. at 153–54. Petitioner was handcuffed and placed in the detective's vehicle where he said that he could help find the missing girl. Id. at 154-55, 157. Petitioner was permitted to take a phone call in the vehicle, and he told the detective that someone would drop A.A. off at a different location. Id. at 157. The detective drove to that location, but A.A. was not there. Id. at 158. After another phone call, petitioner told the detective that A.A. would be dropped off at the 77th Precinct, approximately a mile and a half away. Id. at 176-77. Approximately thirty minutes later, detectives were notified that A.A. had been found at St. Mark's Place and Nostrand Avenue, and they went to pick her up. Id. at 177.

3

At the precinct, Detective Kalisky read petitioner his Miranda warnings, and petitioner made a statement explaining that he had asked some friends to pick A.A. up because she had stolen money from him. Trial Tr., ECF No. 8-6 at 508-12. Petitioner denied being in the car when A.A. was abducted but admitted to following the car and stealing A.A.'s possessions. Id. at 512 Petitioner was placed under arrest by Detective Kalisky on November 22, 2011. Trial Tr., ECF No. 8-7 at 120.

## II. Pre-Trial Proceedings

On December 22, 2011, petitioner was arraigned on the indictment by the Honorable Mark Dwyer of Kings County Supreme Court. Dec. 22, 2011 Tr., ECF No. 8-1. At that time, the prosecutor offered petitioner six years of incarceration and five years of post-release supervision to plead guilty to Kidnapping in the Second Degree. Id. at 4.

The Honorable Danny K. Chun of Kings County Supreme Court held a Huntley-Dunaway hearing[5] from November 26 to November 28, 2012, regarding petitioner's arrest and statements he made to police immediately prior to and following his arrest. Justice Chun denied the motions in their entirety, finding there was probable cause to arrest petitioner.[6] Nov. 28, 2012 Tr., ECF No. 8-2 at 213, 216.

During the pre-trial proceedings on April 11, 2013, the Honorable Bruce Balter of Kings County Supreme Court instructed petitioner and co-defendants' counsels to tell their clients on the

---

[5] "A Dunaway hearing is held to determine whether there was probable cause for a defendant's arrest . . . A Huntley hearing is held to determine the admissibility of statements made by a criminal defendant." Nieves v. Fischer, No. 3 CV 9803 (DC), 2004 WL 2997860, at *1 nn.2-3 (S.D.N.Y. Dec. 28, 2004) (citing Dunaway v. New York, 442 U.S. 200 (1979) and People v. Huntley, 15 N.Y.2d 72, 77–78 (1965)). The Clerk of Court is directed to send petitioner the attached copies of all the unreported cases cited in this Report.

[6] At one point, the hearing transcript incorrectly states petitioner's name as "Andrew Brown." Nov. 28, 2012 Tr., ECF No. 8-2 at 213.

4

record what their maximum sentences could be if they were convicted of the top counts at trial. Apr. 11, 2013 Tr., ECF No. 8-4 at 5. By that time, petitioner's plea offer had been increased to ten years of incarceration and five years of post-release supervision. Id. at 6. Petitioner's attorney, Damien Brown, said on the record: "Mr. Andrew Barnette, you are looking at a B violent felony. You are looking at maximum of 25 years in prison if convicted after a trial." Id. Justice Balter adjourned early that day specifically to give defendants time to confer with their attorneys. Id. at 13 ("I am taking a hiatus to give these gentlemen an opportunity to know what is in front of them, so they may discuss with themselves, by themselves, and with their counsels . . . .") The next day, April 12, 2013, the court asked whether counsel had the opportunity to speak with their clients and discuss "a possible disposition." Apr. 12, 2013 Tr., ECF No. 8-4 at 19. Petitioner's counsel responded in the affirmative. Id. All three defendants proceeded to trial.

**III. Petitioner's Trial**

Petitioner was tried by jury in Kings County Supreme Court from April 22 to May 10, 2013, before the Honorable Bruce Balter. Trial Tr., ECF Nos. 8-6, 8-7, 8-8. The prosecution called many witnesses at trial, including Detective Kalisky. Detective Kalisky testified that two women, Albertha Jovin and Kayla Brown, identified petitioner as one of the kidnappers on the video surveillance from the hotel. Petitioner's counsel unsuccessfully objected on hearsay grounds several times during Kalisky's testimony regarding Kayla Brown. Trial Tr., ECF 8-6 at 502-5.

At the end of the trial, petitioner's counsel asked the Court to instruct the jury that Detective Kalisky's testimony about the two women identifying petitioner in the video was "not for the truth of the matter that the persons were correct in identifying [petitioner] on the video." Trial Tr., ECF 8-7 at 325. The prosecution opposed this request as improper. Id. at 327. The court denied petitioner's request for the jury instruction. Id. at 330.

The jury found petitioner guilty of Kidnapping in the Second Degree, Robbery in the Second Degree, Unlawful Imprisonment in the Second Degree, Assault in the Third Degree, Endangering the Welfare of a Child, Criminal Possession of Stolen Property in the Fifth Degree, and Robbery in the Third Degree on May 10, 2013. Trial Tr., ECF No. 8-8 at 334-36. Petitioner was sentenced on June 7, 2013, to determinate sentences of 25 years for Kidnapping in the Second Degree, 15 years for Robbery in the Second Degree, and four 1-year sentences for the remaining convictions. Sentencing Tr., ECF No. 8-9 at 19-22. The judge ordered the 1-year sentences to run concurrently and the longer sentences to run consecutively. Id. at 22.

**IV. Procedural History**

Petitioner appealed his conviction to the Appellate Division, Second Department (hereinafter "Appellate Division"), and argued five grounds: (1) petitioner's convictions for kidnapping and unlawful imprisonment must be vacated and the charges dismissed because they merged with the underlying crimes of robbery, assault, and endangerment; (2) petitioner's kidnapping conviction should be reversed because the prosecution failed to adduce sufficient evidence that the complainant was abducted; (3) petitioner was denied his due process right to a fair trial because the court admitted the detective's testimony that two people who did not testify at trial told him that they recognized petitioner as one of the men on the videotape of the abduction; (4) the trial court erred in denying preclusion of pre-Miranda statements attributed to petitioner; (5) petitioner's aggregate 40 year sentence is unduly harsh. See Pet'r App. Div. Br., ECF No. 8-10 at 10-11. The Appellate Division modified the trial court's judgment on May 24, 2017, holding that the conviction of unlawful imprisonment in the second degree must be vacated and that all the sentences imposed shall run concurrently with each other. As so modified, the Appellate Division affirmed the trial court's judgment. People v. Barnette, 150 A.D.3d 1134, 1134–35 (2d Dep't

6

2017). Petitioner's request for leave to appeal to the New York Court of Appeals was denied on August 16, 2017. People v. Barnette, 29 N.Y.3d 1123 (2017).

On July 24, 2018, petitioner moved to vacate the conviction under N.Y. C.P.L. § 440.10 arguing ineffective assistance of counsel. See § 440.10 Mot.: Pet. Mem. Law, ECF No. 8-14. The trial court denied the motion on March 1, 2019, ECF No. 17, and the Appellate Division affirmed the denial. People v. Barnette, 186 A.D.3d 1703, 1703 (2020). The Court of Appeals declined petitioner's application requesting further review on December 30, 2020. See § 440.10 Appeal, ECF No. 8-20 Order Den. Leave, ECF No. 8-21.

**V. Instant Petition**

On May 6, 2021, petitioner timely filed the instant *pro se* petition, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., ECF No. 1. Petitioner challenges his conviction on two of the grounds he presented on direct appeal and one ground he presented on collateral review under N.Y. C.P.L. § 440.10. Id. at 29-30; 34-35; 36-37. Respondent opposes the petition, see ECF No. 14-1 ("Resp't Br.") and petitioner filed a reply, ECF No. 22 ("Reply Br.").

## DISCUSSION

**I. Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, if petitioner's claim "was adjudicated on the merits in State court proceedings[,]" the reviewing court may only grant a habeas petition where the adjudication of the claim:

7

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a difficult to meet . . . and highly deferential standard[,]" and review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted) (internal quotation marks omitted). Moreover, a state court's factual findings "'shall be presumed to be correct' unless the petitioner rebuts that presumption 'by clear and convincing evidence.'" Fernandez v. Capra, 916 F.3d 215, 221 n.1 (2d Cir. 2019) (quoting § 2254(e)(1)).

A state court decision is "contrary to … clearly established Federal law," § 2254(d)(1), if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of Federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Supreme Court has made it clear, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410; see also Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state

8

court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

## II. Petitioner's Claims

Petitioner raises three grounds for habeas review: 1) his unlawful arrest led to evidence that should have been suppressed, Pet., ECF No. 1 at 30, 2) his right to a fair trial was violated, id. at 35, and 3) he was denied the effective assistance of counsel, id. at 37.

### A. Petitioner's Fourth Amendment Claim

Petitioner argues that the state lacked probable cause to arrest him. Id. at 30. Petitioner also argues that the statements he made immediately following his arrest should have been suppressed. Id. These arguments are barred from federal habeas review by the Supreme Court's decision in Stone v. Powell, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

The Second Circuit limits habeas review of a state prisoner's Fourth Amendment claims to two narrow situations: "(a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)).

At the conclusion of petitioner's Huntley-Dunaway hearing on November 28, 2012, the state court held that there was probable cause to arrest petitioner and thus denied petitioner's

motion to suppress his post-arrest statements. November 28, 2012 Tr., ECF No. 8-2 at 213-14. Petitioner argues that the state court's finding of probable cause for his arrest constituted an "unconscionable breakdown" under the Second Circuit's rule. Reply Br., ECF No. 22 at 7. However, "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process."[7] Capellan, 975 F.2d at 72. Petitioner raised this issue on direct appeal and although his appeal was unsuccessful, petitioner availed himself of the state corrective process. See Supp. Br., ECF No. 8-11 at 1, 16; see also Blagrove v. Mantello, 104 F.3d 350, 350 (2d Cir. 1996).

The Supreme Court holding in Stone v. Powell is dispositive here. Petitioner fully litigated his Fourth Amendment suppression claim in state court. His claim is barred by Stone v. Powell. Thus, petitioner's Fourth Amendment claim is not cognizable on federal habeas review.

**B. Petitioner's Right to a Fair Trial and Sixth Amendment Claims**

Petitioner argues that the admission of Detective Kalisky's testimony that two non-testifying individuals identified petitioner from a security video was constitutional error. Pet., ECF No. 1 at 35. Liberally construed,[8] petitioner raises a Confrontation Clause claim. Petitioner asserts that the cumulative effect of this error, combined with the admission of statements he made before he was Mirandized,[9] deprived him of a fair trial and "had [a] substantial and injurious effect." Reply Br., ECF No. 22 at 17 (quoting Arroyo v. Lee, 831 F. Supp. 2d 750, 762 (S.D.N.Y. 2011)).

---

[7] While the lower state court did mistakenly say that petitioner's statements about A.A. came prior to his handcuffing, this does not constitute an unconscionable breakdown of state procedures as petitioner had a full and fair opportunity to litigate his claims. See Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002).

[8] Since petitioner is *pro se*, the Court interprets his arguments to "raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see also Licausi v. Griffin, 460 F. Supp. 3d 242, 260 (E.D.N.Y. 2020) (liberally construing a *pro se* habeas petition).

[9] Petitioner argued throughout his state court proceedings that his pre-Miranda statements should have been precluded under N.Y. C.P.L. § 710.30, see, e.g., Pet'r App. Div. Br., ECF No. 8-10 at 66. The Appellate Division agreed but

The Supreme Court has repeatedly affirmed that under the Sixth Amendment's Confrontation Clause, a criminal defendant must have a meaningful opportunity to cross-examine witnesses against him. See Bruton v. United States, 391 U.S. 123, 126 (1968); Smith v. Illinois, 390 U.S. 129, 129-130 (1968); see also Alvarez v. Ercole, 763 F.3d 223, 229-30 (2d Cir. 2014) ("Supreme Court law clearly establishes that, under the Sixth Amendment's Confrontation Clause, a criminal defendant must have a meaningful opportunity to cross-examine witnesses against him.") (internal quotation marks omitted). Defendants in state and federal court are equally entitled to this constitutional right. Pointer v. Texas, 380 U.S. 400, 407 (1965).

However, "[a] defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619 (1953). Not all errors undermine a fair trial. Constitutional errors at trial do not require reversal if they are harmless. Under Chapman v. California, an error is "harmless beyond a reasonable doubt" when there is no reasonable possibility that the error might have contributed to the defendant's conviction. 386 U.S. 18, 24 (1967) (citing Fahy v. Connecticut, 375 U.S. 85, 84) (1963)); see also People v. Crimmins, 36 N.Y.2d 230, 327 (1975).

While state courts apply the Chapman standard when reviewing constitutional errors on direct appeal, the Supreme Court held in Brecht v. Abrahamson that federal habeas courts must apply a "less onerous" standard on collateral review of state court convictions. 507 U.S. 619, 637 (1993). The Brecht standard for determining whether habeas relief must be granted is whether the

---

held that the error was harmless beyond a reasonable doubt. People v. Barnette, 150 A.D.3d 1134, 1136 (2d Dep't 2017). Respondent argues that this is not a federal constitutional violation, but rather a state law claim, which is not cognizable on federal habeas review. Resp't Br., ECF No. 14-1 at 10–11. In order to satisfy the fair presentation requirement for federal habeas review, petitioner needs to raise the claim under the Constitution in the state court proceedings, "thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). Petitioner's brief on direct appeal explicitly references the Sixth Amendment and the right to a fair trial. Pet'r App. Div. Br., ECF No. 8-10 at 6–7; 54, 69-70. Therefore, petitioner sufficiently alerted the state court to the constitutional nature of this claim, and this ground is cognizable.

11

constitutional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." Id. at 637–38 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). A federal habeas court must assess the prejudicial impact of constitutional errors under the Brecht standard even if the state appellate court already reviewed the errors for harmlessness under the Chapman standard. Fry v Pliler, 551 U.S. 112, 121-22 (2007); see also Wood v. Ercole, 644 F.3d 82, 94 (2d Cir. 2011) ("[W]e conclude that the unreasonable application of Chapman standard does not survive Fry.") (internal quotation marks omitted). "When a Chapman decision is reviewed under [the] AEDPA, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable." Davis. v. Ayala, 576 U.S. 257, 269 (2015) (emphasis in original).

Here, the state appellate court considered and rejected petitioner's claims, finding any errors harmless.[10] Under the AEDPA, the state appellate court's determination commands significant deference. See Davis, 576 U.S. at 269. Petitioner fails overcome the ADEPA deference and the state court's determination was not contrary to or an unreasonable application of clearly established Federal law. Petitioner fails to demonstrate that admission of the testimony at issue had a "substantial and injurious effect or influence in determining the jury's verdict" under the Brecht standard, as there was other significant evidence of petitioner's guilt, including A.A.'s extensive testimony and corroborating evidence. Therefore, the petition should be denied.

---

[10] The state appellate court found that "[a]ny error in admitting testimony that two nontestifying witnesses identified the defendant from a security video does not require reversal" as "it did not deprive the defendant of a fair trial." Barnette, 150 A.D.3d at 1135. The state appellate court added that "any other error in this regard was harmless, since the evidence of the defendant's guilt, without reference to this testimony, was overwhelming, and there was no reasonable possibility that this evidence might have contributed to the defendant's conviction." Id. The state appellate court similarly held that the trial court's error in admitting "statements [petitioner] made to a detective" prior to being Mirandized was harmless. Id. at 1136. The appellate court stated the "the cumulative effect of these errors did not deny the defendant a fair trial[.]" Id.

**C. Petitioner's Ineffective Assistance of Counsel Claim**

Petitioner also argues that his trial counsel was ineffective because (1) counsel failed to adequately advise petitioner regarding his initial six-year plea offer, (2) counsel failed to ascertain petitioner's sentencing status (i.e., whether or not he was a predicate felony offender), and (3) counsel gave unreasonable advice regarding petitioner's maximum sentencing exposure after trial. Pet., ECF No. 1 at 37.

To prevail on an ineffective assistance of counsel claim, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 88 (1984). In addition, petitioner must prove prejudice by establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Supreme Court has held that claims of ineffective assistance of counsel in the plea bargain context are subject to the Strickland test. See Lafler v. Cooper, 566 U.S. 156, 163-64 (2012); Hill v. Lockhart, 474 U.S. 52, 58–59 (1985). The Strickland standard, "although by no means insurmountable, is highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). Further, if a state court has adjudicated the ineffective assistance claim on the merits, a petitioner seeking collateral habeas review must not only overcome the "heavy burden" imposed by Strickland but faces the "added hurdle posed by the highly deferential review accorded state court adjudications" under the AEDPA.[11] Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003).

---

[11] Here, petitioner cited Strickland in his appellate brief thereby alerting the Appellate Division to his federal claim (see ECF No. 19 at 30) and the state appellate court denied petitioner's ineffective assistance claim on substantive grounds in a judgment, rendering adjudication of petitioner's ineffective assistance claim "on the merits" for the purposes of the AEDPA. A state court need not explicitly apply Strickland to an ineffective assistance claim to trigger the AEDPA's heightened deferential standard on habeas review.

Turning first to the six-year plea offer, petitioner fails to prove that his counsel's representation fell below "an objective standard of reasonableness," Strickland, 466 U.S. at 688, by claiming that counsel failed to advise him of the desirability of the plea. ECF No. 22 at 18-19. The Second Circuit has noted that "reasonable professional conduct does not under all circumstances require a lawyer to give an explicit opinion as to whether a client should take a plea offer." Purdy v. United States, 208 F.3d 41, 48 (2d Cir. 2000). As such, this Court cannot say that counsel's alleged failure to advise petitioner as to the benefits of the six-year plea fell below an objective standard of reasonableness.

That said, petitioner also claims that counsel failed to advise him of the correct sentencing range he faced if convicted. However, the state appellate court found that petitioner did not demonstrate a "reasonable possibility" that he would have accepted the six-year plea but for his counsel's allegedly ineffective assistance, notwithstanding petitioner's affidavit to the contrary.[12] Further, petitioner maintained his innocence throughout the state court proceedings, including at his sentencing hearing. Sentencing Tr., ECF 8-9 at 16-17. This suggests that petitioner would have declined the plea offer regardless of counsel's advice. See Shields v. Stallone, No. 14 CV 7596 (PKC)(DF), 2016 WL 11483841, at *18 (S.D.N.Y. Aug. 16, 2016), report and recommendation adopted, 2016 WL 5930262 (S.D.N.Y. Oct. 12, 2016); Abraham v. Lee, No. 13 CV 2525 (RWS), 2014 WL 3630876 (S.D.N.Y. July 22, 2014) (noting that "[p]etitioner's argument that he would have accepted the plea bargain instead of going to trial is belied by his continued claim of innocence.") (collecting cases); see also Assadourian v. Brown, 493 F. App'x 223, 224-25 (2d Cir.

---

[12] As noted, the Kings County Supreme Court denied petitioner's N.Y. C.P.L. § 440.10 motion alleging ineffective assistance of counsel, and the Appellate Division affirmed. Barnette, 186 A.D.3d 1703 (2020) ("[W]e agree with the [Kings County] Supreme Court's determination that, under the circumstances attending the case, there was no reasonable possibility that the defendant's self-serving allegation that he would have accepted the offer of six years, during the short period in which it was available, was true.").

2007) (summary order) (petitioner's "failure to establish that he was prejudiced by counsel's actions is dispositive" of his ineffective assistance claim). Petitioner therefore fails to satisfy the prejudice prong of Strickland.

Next, petitioner asserts that he received ineffective assistance of counsel when his lawyer underestimated petitioner's maximum sentencing exposure. Petitioner's counsel stated to his client in open court that the maximum sentence petitioner faced if convicted at trial was twenty-five years.[13] Apr. 11, 2013 Tr., ECF No. 8-4 at 6. In fact, petitioner faced the prospect of consecutive sentences and was sentenced to forty years. Sentencing Tr., ECF No. 8-9 at 19–22. However, as his sentence was modified on appeal so that all sentences run concurrently, petitioner is now serving twenty-five years. Barnette, 150 A.D.3d at 1134–35.

The state appellate court denied petitioner's ineffective assistance claim.[14] Petitioner's term of incarceration was modified on direct appeal in the interest of justice to the twenty-five year sentence counsel had stated was the maximum sentence. Barnette, 150 A.D.3d at 1134–35; see Page v. Martuscello, No. 10 CV 9699 (JSR)(AJP), 2011 WL 3678820, at *30 (S.D.N.Y. Aug. 23, 2011) (finding modification of sentence to the duration which petitioner believed to be correct when rejecting plea is a factor militating against a finding of prejudice), report and recommendation adopted, 2013 WL 1092825 (S.D.N.Y. Mar. 15, 2013), aff'd, 561 F. App'x 118 (2d Cir. 2014). As already noted, the state court did not credit petitioner's self-serving statement that he would have accepted the six-year plea—let alone a higher ten-year plea—if given proper

---

[13] While the transcript indicates that petitioner's counsel may have been referring only to the top count at that time, on multiple other occasions, petitioner's counsel made statements indicating that he believed his client's maximum sentencing exposure was twenty-five (25) years. See Trial Tr. ECF No. 8-8 at 16; ECF No. 8-14 at 115.

[14] The Appellate Division held that "where, as here, counsel's alleged error is the failure to advise the defendant of the legal possibility of consecutive sentences, and the judgment, as modified on direct appeal, does not include consecutive sentences, the defendant has failed to raise a triable issue of fact sufficient to require a hearing on that claim." Barnette, 186 A.D.3d at 1704.

sentencing guidance. Barnette, 186 A.D.3d at 1703-4. As such, petitioner does not demonstrate he was prejudiced by his counsel's misstatement regarding his maximum sentencing exposure, nor does he show the state court's holding was unreasonable.

Finally, petitioner alleges that his counsel failed to ascertain his sentencing status as a nonpredicate felony offender. However, again, petitioner fails to show prejudice. After it was discovered that petitioner was not a predicate felony offender, petitioner's plea offer remained ten years. Apr. 11, 2013 Tr., ECF No. 8-4 at 6. Indeed, the state appellate court concluded that "any failure by counsel to investigate the defendant's predicate status had no affect [*sic*] on the plea negotiations." Barnette, 186 A.D.3d at 1704.

Petitioner cites Mask v. McGinnis, 233 F.3d 132 (2d Cir. 2000) in his reply brief to encourage the Court to find prejudice. Reply Br., ECF. No. 22 at 22–24. However, Mask is easily distinguished. As Judge Dearie found in a challenge to a federal sentence, Mask was unique because "every indication in the record" supported the conclusion that "the prosecutor would have made a better plea offer [had] she not felt that she was bound by mandatory violent felon provisions of New York State Penal Law § 70.08." Williams v. United States, No. 07 CV 1804 (RJD), 2012 WL 1116403, at *11 (E.D.N.Y. Mar. 30, 2012) (quoting Mask, 233 F.3d at 142); see also Assadourian, 493 Fed.Appx. at 225 (rejecting argument that state court acted unreasonably because its holding was inconsistent with Mask "as habeas relief is only warranted where a state court unreasonably applies clearly established Supreme Court law…").

The record in this case does not support petitioner's claim that his counsel's failure to ascertain his predicate status prejudiced him. The prosecutor raised the plea offer from six to ten years between December 22, 2011 and April 4, 2012. Dec. 22, 2011 Tr., ECF No. 8-1 at 4; Apr. 4, 2012 Tr., ECF No. 8-1 at 17. There is no record support for petitioner's assertion that this

16

increase was motivated by an incorrect belief that petitioner was a predicate felony offender, or that the prosecutor incorrectly believed petitioner's predicate status precluded a better plea offer. Indeed, unlike in Mask, the prosecutor in this case learned of petitioner's correct status *before* petitioner's conviction but did not reduce the plea offer. See Apr. 11, 2013 Tr., ECF No. 8-4 at 6 (acknowledging petitioner "is not a predicate" offender and restating the plea offer as ten years jail time). Finally, in Mask, the habeas court did not defer to the state courts' legal or factual analysis because the lower state court did not reference the correct "reasonable probability" standard when assessing whether the underlying error prejudiced the petitioner, and instead required a showing of certainty. Mask, 233 F.3d at 140. Here, the lower state court referenced the "reasonable probability" standard and evaluated whether petitioner demonstrated a "reasonable probability" that he would have accepted a plea. ECF No. 8-17 at 7-9.

Therefore, the state court's decision regarding petitioner's ineffective assistance of counsel claims was not contrary to or an unreasonable application of clearly established Federal law, and the petition should be denied.

## CONCLUSION

It is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259–260 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment

denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: November 16, 2022
       Brooklyn, New York